■ In the Matter of ELIJAH NN., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOY NN., Appellant, et al., Respondent. [798 NYS2d 252]—

Kane, J. Appeal from an order of the Family Court of Otsego County (Burns, J.), entered July 23, 2004, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondents' child to be permanently neglected, and terminated respondents' parental rights.

Respondents Joy NN. (hereinafter respondent) and McKinley *NN. are the parents* of Elijah NN. (born in 1999). The child was removed from respondents' custody in January 2002 after he was exposed to domestic violence by both parents. Respondent was granted an adjournment in contemplation of dismissal (hereinafter ACD) on the related neglect petition. In September 2003, petitioner commenced this termination proceeding based on permanent neglect. Following fact-finding and dispositional hearings, Family Court granted the petition and terminated respondents' parental rights. Only respondent appeals.

Family Court did not err in finding that respondent permanently neglected Elijah. Respondent first argues that petitioner should not have been permitted to proceed with a termination proceeding after she was granted an ACD in the neglect proceeding. A permanently neglected child is defined as a child who is in the care of petitioner or another similar agency "and whose parent or custodian has failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child . . . notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]). The statute does not make any distinction as to how or why the child came under the agency's care, rendering it appropriate for petitioner to file a permanent neglect petition after a child has been in its custody for over a year regardless of the circumstances under which that child came into its care. As the ACD and an extension permitted Elijah to remain in petitioner's care for more than one year, the petition was appropriately filed and considered, despite an ACD on the original neglect petition and extension.

Petitioner met its obligation to prove by clear and convincing evidence that it made diligent efforts to strengthen the parental relationship and that respondent failed to realistically plan for the child's future (*see Matter of Star Leslie W.*, 63 NY2d 136, 142-143 [1984]; *Matter of Ariel PP.*, 9 AD3d 628, 628-629 [2004], *lv denied* 3 NY3d 608 [2004]). Petitioner's sufficient diligent efforts included providing mental health counseling, homemaker services, regular visitation with the child, a parent aide, anger management classes, a housing subsidy and transportation to services, court, visitation, medical appointments and employment (*see Matter of Karina U.*, 299 AD2d 772, 772 [2002], *lv denied* 100 NY2d 501 [2003]). Although respondent maintained regular contact with the child through twice weekly visits, contact and planning for the child's future are alternative elements, meaning petitioner only had to prove that respondent was deficient in one of them (*see Matter of Shannon U.*, 210 AD2d 752, 754 [1994], *lv denied* 85 NY2d 807 [1995]). "[T]he planning requirement contemplates that the parent shall take such steps as are necessary to provide a home that is adequate and stable, under the financial circumstances existing, within a reasonable period of time. Good faith alone is not enough: the plan must be realistic and feasible" (*Matter of Star Leslie W., supra* at 143; *see Matter of Keith JJ.*, 295 AD2d 644, 648 [2002]). Failure to address the problems or conditions that led to the child's removal constitutes a failure to plan for the child's future

(*see Matter of Brandon OO.*, 304 AD2d 873, 874 [2003]; *Matter of Karina U., supra* at 773).

Here, although respondent completed a 13-week course addressing domestic violence and anger management, soon after completion she and her husband engaged in a dispute necessitating police involvement. She was then required to participate in a 26-week anger management course, which she had not completed at the time the petition was filed. Her marital relationship was obviously stormy, yet she continued to reside with her husband, who had not completed his court-ordered anger management class. For several months prior to the filing of the petition, the parents were homeless, and at the time of filing, they were living in a half-trailer which they admitted was too small for them and the child. Respondent's completion of the first anger management course was insufficient to meet her obligations—a parent is required to not only attend classes, but to benefit from the services offered and utilize the tools or lessons learned in those classes in order to successfully plan for the child's future. Giving great weight and deference to Family Court's factual determinations (*see Matter of Cassandra JJ.*, 284 AD2d 619, 621 [2001]), the record supports the court's determination that, after receiving numerous services, respondent continued to have trouble controlling her anger and had not established a suitable stable home for Elijah, thus exhibiting her failure to plan for her child's future (*see Matter of Tabitha BB.*, 304 AD2d 875, 876 [2003]).

Mercure, J.P., Crew III, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.