◼ In the Matter of ARIANNA BB., a Child Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TRACY DD., Appellant. (Proceeding No. 1.) In the Matter of ARIANNA BB., a Child Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CARVER BB., Appellant. (Proceeding No. 2.) [974 NYS2d 586]—

Peters, P.J. Appeals from two orders of the Family Court of Tompkins County (Rowley, J.), entered September 17, 2012, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate Arianna BB. to be a permanently neglected child, and terminated respondents' parental rights.

Respondent Tracy DD. (hereinafter the mother) and respondent Carver BB. (hereinafter the father) are the parents of a daughter born in 2009. Petitioner removed the child from respondents' care when she was 11 months old based upon, among other things, their parental history of substance abuse.

At the time of the child's removal, the father was incarcerated at a local jail and was soon after extradited to Virginia to commence serving a sentence there. Thereafter, each parent stipulated to a finding of neglect and consented to a dispositional order requiring them to, among other things, successfully complete the Tompkins County Family Treatment Court program. In May 2011, petitioner commenced these permanent neglect proceedings against respondents. Following a fact-finding and dispositional hearing, Family Court adjudicated the child to be permanently neglected and terminated respondents' parental rights. Respondents appeal.

We reject the father's assertion that his due process rights were violated when Family Court proceeded with a portion of the fact-finding hearing in his absence. Although a parent in a proceeding seeking to terminate parental rights has a right to be present for all stages of the proceeding, that right is not absolute (*see Matter of Eileen R. [Carmine S.]*, 79 AD3d 1482, 1483 [2010]; *Matter of Jasper QQ.*, 64 AD3d 1017, 1019 [2009], *lv denied* 13 NY3d 706 [2009]). On the second day of the fact-finding hearing, the father's counsel appeared and informed the court that his client would not be present due to health reasons. Rather than request an adjournment, counsel affirmed that the father's attendance at the hearing "would not be required today," requested another hearing date—which the court agreed to schedule—so as to allow the father to testify, and thereafter actively participated in the hearing.[1] Under these circumstances, we discern no error in Family Court's decision to proceed with the hearing in the father's absence or any prejudice inuring to the father as a result thereof (*see Matter of Keyanna AA.*, 35 AD3d 1079, 1081 [2006]; *Matter of Curtis N.*, 288 AD2d 774, 776 [2001], *lv denied* 97 NY2d 610 [2002]; *Matter of Andrew MM.*, 279 AD2d 654, 655-656 [2001]; *Matter of Jennifer DD.*, 227 AD2d 675, 676 [1996]; *see also Matter of Paige WW. [Charles XX.]*, 71 AD3d 1200, 1205 [2010]).

Turning to the merits, we find that petitioner established by clear and convincing evidence that respondents permanently neglected their daughter. The threshold inquiry in a permanent neglect proceeding is whether the agency made "diligent efforts to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [a]; *see Matter of Hailey ZZ. [Ricky ZZ.]*, 19 NY3d 422, 429 [2012]; *Matter of Damian L. [Frederick L.]*, 100 AD3d 1193, 1194 [2012]). Once that showing has been made, petitioner must prove that the parent failed to maintain

---

**1.** The father appeared at the next hearing date, but elected not to testify and did not seek to reopen the mother's testimony.

contact with the child or plan for his or her future for the requisite time period (*see* Social Services Law § 384-b [7] [a]; *Matter of Hailey ZZ. [Ricky ZZ.]*, 19 NY3d at 429).

With respect to the mother, the problems that led to the removal of the child included her substance abuse, mental health issues, criminal activity, history of domestic violence with the father and lack of appropriate housing for the child. Petitioner created a service plan to address these issues and referred the mother to numerous substance abuse treatment programs, various forms of mental health counseling, psychosocial and psychological evaluations and domestic violence services. In addition, petitioner arranged for and facilitated supervised visitations with the child, provided transportation assistance, attempted to assist the mother in obtaining housing, met with the mother on a regular basis, and held team meetings in conjunction with the Tompkins County Family Treatment Court and the mother's various service providers to review the family's progress and whether additional services would be needed. Although the mother argues that greater emphasis should have been placed on mental health treatment, the record reflects that petitioner consistently made reasonable attempts to assist the mother in addressing her mental health issues, but that it was her frequent relapses and criminal behavior that caused disruption or alteration of the mental treatment she might have received. Thus, we find that petitioner established by clear and convincing evidence that it made diligent efforts to assist the mother in overcoming the problems that led to the child's removal (*see Matter of Havyn PP. [Morianna RR.]*, 94 AD3d 1359, 1360-1361 [2012]; *Matter of Chorus SS. [Elatisha SS.]*, 93 AD3d 1097, 1098 [2012], *lv denied* 19 NY3d 807 [2012]; *Matter of Sharon V. v Melanie T.*, 85 AD3d 1353, 1354-1355 [2011]).[2]

We also find clear and convincing evidence that, despite petitioner's diligent efforts in this regard, the mother failed to plan for the child's future. "[F]ailure to correct the conditions that led to the removal of the child constitutes a failure to plan for the child's future" (*Matter of Destiny CC.*, 40 AD3d 1167, 1169 [2007] [internal quotation marks and citations omitted]; *see Matter of Tailer Q. [Melody Q.]*, 86 AD3d 673, 674, [2011]). While there is no dispute that the mother maintained contact

---

2. We reject the mother's claim that petitioner breached its duty by continuing the child's placement with a foster parent who thwarted her attempts to establish a relationship with the child (*see Matter of Victorious LL. [Jonathan LL.]*, 81 AD3d 1088, 1090 [2011], *lv denied* 16 NY3d 714 [2011]). The record reflects that the child was placed with a family member and, once it became evident that the placement was not appropriate, she was removed by petitioner and placed with her current foster family.

with the child and participated in various substance abuse programs, both inpatient and outpatient, she was unable to remain sober for any appreciable period of time during the more than one-year period preceding the filing of the permanent neglect petition. She tested positive for cocaine and marihuana in May 2010 and, after serving a brief jail sentence, relapsed in August 2010 prior to entering an inpatient substance abuse program because, by her own admission, she was "going to rehab anyway" and "might as well get high." Following her discharge from that program, the mother twice relapsed on crack cocaine. As a consequence of her conduct, a parole violation was filed against her and she was sentenced to a term of imprisonment which extended through the fact-finding hearing. Furthermore, the mother had multiple documented suicide attempts during the relevant period notwithstanding her participation in several mental health treatment programs. Given the mother's failure to meaningfully benefit from the services offered to her and to correct the conditions that led to the child's removal, Family Court properly found that the mother permanently neglected her daughter (see Matter of Havyn PP. [Morianna RR.], 94 AD3d at 1361-1362; Matter of Chorus SS. [Elatisha SS.], 93 AD3d at 1099; Matter of Summer G. [Amy F.], 93 AD3d 959, 961-962 [2012]; Matter of Sharon V. v Melanie T., 85 AD3d at 1355).

The father does not challenge Family Court's threshold determination that petitioner made the requisite diligent efforts, but argues only that petitioner did not establish that he failed to plan for the child's future. Like the mother, however, the father failed to take meaningful steps to correct the conditions that led to the child's removal—namely, his substance abuse, criminal activity and history of domestic violence. He was incarcerated at the time of the child's removal and, following his release in December 2010, he resumed using crack cocaine with the mother. Moreover, just prior to the filing of the instant petition, he tested positive for four different substances, including cocaine and heroin. The father also failed to complete mandated mental health services as well as domestic violence and anger management programs, continued to engage in domestic violence with the mother, lost his housing and lacked any stable income. Furthermore, the father offered no plan for the child's future, and his failure to testify permitted Family Court to draw the strongest possible inferences against him (see Matter of Nassau County Dept. of Social Servs. v Denise J., 87 NY2d 73, 79 [1995]; Matter of Michael JJ. [Gerald JJ.], 101 AD3d 1288, 1290, 1291 [2012], lv denied 20 NY3d 860 [2013]; Matter of Jacob WW., 56 AD3d 995, 997 [2008]). To the extent that he now as-

serts that keeping the child in foster care for an undetermined period of time while he attempts to rehabilitate himself constitutes a viable plan, we simply cannot agree. Such a "plan" is contrary to the child's best interests and antithetical to her need for permanency (*see Matter of Johanna M. [John L.]*, 103 AD3d 949, 951 [2013], *lv denied* 21 NY3d 855 [2013]; *Matter of Kaiden AA. [John BB.]*, 81 AD3d 1209, 1210-1211 [2011]). Accordingly, we find no basis to disturb Family Court's conclusion that the father permanently neglected the child by failing to adequately and realistically plan for her future (*see Matter of Johanna M. [John L.]*, 103 AD3d at 951; *Matter of James J. [James K.]*, 97 AD3d 936, 938-939 [2012]; *Matter of Chorus SS. [Elatisha SS.]*, 93 AD3d at 1099; *Matter of Kaiden AA. [John BB.]*, 81 AD3d at 1210-1211).

Finally, we reject respondents' contention that Family Court should have entered a suspended judgment in lieu of terminating their parental rights (*see* Family Ct Act § 631). Although the mother completed a number of programs during her most recent incarceration, including alcohol and substance abuse treatment, she has a long and consistent history of failing to benefit from such services. As for the father, although he had successfully completed an inpatient substance abuse program, he thereafter relapsed on cocaine and was serving a sentence at a local jail. The child, who has been in foster care for all but 11 months of her young life, has a strong bond with and is thriving in the care of her foster parents, who intend to adopt her. Given all of the circumstances, we are of the view that Family Court properly found that termination of respondents' parental rights was in the child's best interests (*see Matter of Summer G. [Amy F.]*, 93 AD3d at 962; *Matter of Angelina BB. [Miguel BB.]*, 90 AD3d 1196, 1198 [2011]; *Matter of Crystal JJ. [Sarah KK.]*, 85 AD3d 1262, 1264 [2011], *lv denied* 17 NY3d 711 [2011]).

Respondents' remaining contentions, to the extent not specifically addressed herein, have been examined and found to be lacking in merit.

Rose, Lahtinen and Garry, JJ., concur. Ordered that the orders are affirmed, without costs.