OPINION OF THE COURT
Randy Sue Marber, J.
The petitioner, Daniel E Malley, individually and as president of Argyle Home Improvement, Inc., commenced the within proceeding for a judgment pursuant to CFLR 7803, granting the following relief: (a) directing the Commissioner of the Nassau County Office of Consumer Affairs (hereinafter the Commissioner) and the Office of Consumer Affairs (hereinafter Consumer Affairs) to forthwith lift the suspension of the petitioners’ home improvement license pursuant to and in accordance with the provisions of the Nassau County Administrative Code (hereinafter NCAC), chapter XXI, title D-l; (b) directing the Commissioner and Consumer Affairs to adopt rules and regulations for the issuance of temporary home improvement licenses pursuant to NCAC § 21-11.12 (6); (c) directing the Commissioner and Consumer Affairs to make petitioners’ home improvement license a full license, and not a temporary license, as required by NCAC §§ 21-11.5, 21-11.6 and 21-11.8; (d) directing the Commissioner and Consumer Affairs to write a letter to petitioners if the license is suspended, setting forth the reasons therefor and setting a hearing date with at least 10 days’ notice prior thereto, as required by NCAC § 21-11.13 (b); (e) directing the Commissioner and Consumer Affairs to appoint members to constitute the Home Improvement Industry Board and to receive its recommendation for the standards and conditions under which a license may be revoked or suspended, as required by NCAC § 21-11.14; and (f) directing the Commissioner and the County of Nassau to pay petitioners’ attorneys fees as incidental damages. The petition is determined as hereinafter provided.
The petitioner, Daniel E Malley, is presently the owner and president of Argyle Home Improvement, Inc. (hereinafter Argyle) (see petition 1i 3). Frior thereto and until September 2010, Mr. Malley was a principal in a licensed home improvement business bearing the name “Webster Home Improvement Enterprises” (hereinafter Webster) (id. 1Í11). Thereafter, Mr. Malley formed Argyle and in connection therewith obtained a licence to operate same as a home improvement business in Nassau County for the period between December 1, 2010 and November 30, 2012 (id. Kli 12, 13).
*822 On January 6, 2011, a consumer complaint was filed by Jeanne Lambert against Webster, the substance of which alleged that she was overcharged with respect to certain repairs undertaken by Webster at Ms. Lambert’s home {id. 1Í 14; see also exhibits B, C, D). As a result of said complaint, on or about January 13, 2011, Consumer Affairs suspended “the temporary Nassau County Home Improvement License” issued to Argyle “pending the outcome of consumer Lambert’s case” {id. If 17; see also exhibits C, D). On February 16, 2011, the Lambert matter was ultimately settled whereby the consumer received the sum of $18,000 from Webster in exchange for which she executed a general release {id. 1Í1Í 34, 35; see also exhibit E). Subsequently, on March 29, 2011, counsel for the petitioners sent a letter to the Commissioner informing her that the Lambert matter had been resolved and based thereon requested the license suspension be lifted {id. If 36; see also exhibit F). The petitioners allege that to date, the Commissioner has failed to respond to said correspondence, the suspension has yet to be lifted and no hearing in relation thereto has ever been held {id. Hit 37, 43).
As a result of the foregoing, the within proceeding was commenced by the petitioners which requests the various forms of relief as are recited herein above. In support thereof, the central contention posited by the petitioner, Daniel Malley, is that as he was not afforded either a hearing or a notice of hearing prior to the suspension of the home improvement license, as is required by NCAC § 21-11.13, the Commissioner has blatantly failed to comply with the express provisions thereof and has violated his due process rights as guaranteed under the United States Constitution {see petition 1Í1Í19-24, 42, 43; see also reply and objections in points of law at points 1, 2).
The petitioner, Malley, further contends that the Commissioner’s failure to issue a full license, as opposed to a temporary license, was arbitrary and capricious, as well as a violation of the rights guaranteed by the Federal Constitution {see petition 1f 44). To this point, the petitioner asserts that while the NCAC § 21-11.7 (5) empowers the Commissioner to issue a temporary license, none of the circumstances enumerated therein and which would warrant the issuance thereof, were present when Argyle procured its license and as such the license issued to the petitioners should have been a full license {id. H1f 27, 31, 33; see also reply and objections in point of law at point 1).
The petitioner, Malley, also asserts that the Commissioner has further violated NCAC § 21-11.14 (3) (2), by failing to appoint a *823 Home Improvement Industry Board and that had she done so, she would have benefitted from the knowledge that such a Board could have provided, thus preventing arbitrary license suspensions, like that which is alleged herein (see petition H1Í 39, 40; see also reply and objections in point of law at point 1).
Finally, with respect to the issue of counsel fees, the petitioner posits that the due process violations committed by the respondents herein also constitute violations under 42 USC § 1983, and as such an award of counsel fees is appropriate under 42 USC § 1988 (see reply and objections in point of law at point 3).
In the verified answer and objections in point of law, counsel for the respondents initially contends that the petitioners have failed to allege an injury-in-fact and are not within the zone of interest attendant to the statutory scheme at issue herein and accordingly lack standing to maintain the within proceeding (see verified answer at 5-8). Counsel further asserts that the actions undertaken by the respondents were neither arbitrary nor capricious, thus warranting dismissal of the within petition (id. at 8-10). Counsel provides the affidavit of Commissioner, Madalyn F. Farley, who avers, inter alia,
“[u]pon reviewing . . . Halley’s application for a license filed in relation to Webster . . . , it was discovered that Halley had previously been employed by a company by the name of Vinylseal . . . [which] had had its license suspended by the Office of Consumer Affairs due to a pattern of unfair dealings with consumers, particularly the elderly, by its sales representatives’ ’ (see Farley affidavit 1Í10).
Commissioner Farley further states that “Halley’s name was mentioned in at least six of the complaints against Vinylseal and four of those involved the same type of scheme against the elderly” (id.). The Commissioner concluded that based upon her review of Hr. Halley’s alleged prior actions and in accordance with subdivisions (4) and (9) of NCAC § 21-11.8, she properly suspended the petitioners’ license and it is only the revocation thereof which requires a hearing before such an action could be taken (id. HH 14, 15; see also verified answer at 11).
In addition to the foregoing, and with particular respect to those branches of the within petition denominated (a), (c) and (d), counsel for the respondents contends that the mandamus relief requested by the petitioners is unavailable given that the scope of the Commissioner’s duties relevant thereto encompas *824 ses something beyond that of discharging a ministerial act (see verified answer at 11-12). Finally, with respect to the petitioners’ request for counsel fees, the respondents contend given the absence of any contractual or statutory liability, an award thereof is inappropriate (id. at 12, 13).
In consideration that standing is a threshold matter, where the absence of which is an inviolable impediment to bringing an action or proceeding, the court will initially address whether the petitioners possess the requisite standing to maintain the within proceeding (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761 [1991]; Gilman v Abagnale, 235 AD2d 989 [3d Dept 1997]). In order to establish standing, it is incumbent upon a plaintiff or petitioner to demonstrate an “injury in fact” in that he or she will actually suffer harm from the challenged action, which in this case is the suspension of the petitioners’ home improvement license (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207 [2004]). “The existence of injury in fact — an actual legal stake in the matter being adjudicated— ensures that the party seeking relief has some concrete interest in prosecuting the action which casts the dispute ‘in a form traditionally capable of judicial resolution’ ” (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772 [1991], supra, quoting Schlesinger v Reservists Comm. to Stop the War, 418 US 208, 220-221 [1974]). The injury alleged by a plaintiff or petitioner must be more than “conjectural” in nature and it is necessary for a petitioner to demonstrate that the injury asserted must fall within his or her “zone of interests” (id. at 227; see also Silver v Pataki, 96 NY2d 532 [2001]).
In the instant matter, the court finds that the suspension of the petitioners’ home improvement license, while perhaps factually justified, nonetheless impedes Mr. Malley’s ability to conduct business and as such an injury-in-fact has been visited upon the petitioners herein (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207 [2004], supra). Moreover, the court is not at all persuaded by the respondents’ contention that the petitioners do not fall within the “zone of interest” attendant to the statutory scheme at issue. While indeed title D-l of the NCAC was promulgated to “safeguard and protect the homeowner against abuses on the part of home improvement contractors” (NCAC § 21-11.0), the numerous provisions contained therein clearly address the licensing of individuals and entities, like the named petitioners, and accordingly they are clearly within the zone of interest created by the NCAC (So *825 ciety of Plastics Indus. v County of Suffolk, 77 NY2d 761 [1991], supra; Silver v Pataki, 96 NY2d 532 [2001], supra).
Accordingly, the court finds that the petitioners have standing to maintain the within proceeding (id.).
The court now addresses the substance of the matters herein raised. Where, as here, a proceeding seeks judicial review of an administrative action, “it is settled that. . . , the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious” (Matter of Cohen v State of New York, 2 AD3d 522, 525 [2d Dept 2003], quoting Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]). Thus, even assuming differing “conclusions could be reached as a result of conflicting evidence, a court may not substitute its judgment for that of the agency where the agency’s determination is supported by the record” (Matter of Cohen v State of New York, 2 AD3d 522, 525 [2003], supra). The standard of whether a given determination is arbitrary and capricious “requires the court to assess whether the action in question was taken ‘without . . . regard to the facts’ ” (Matter of County of Monroe v Kaladjian, 83 NY2d 185, 189 [1994], quoting Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).
As noted above, the petitioners claim, inter alia, that by suspending the home improvement license in the absence of either a predeprivation hearing or notice relative thereto, the Commissioner, as well as Consumer Affairs have violated their due process rights as are guaranteed under the United States Constitution. The court will now address the viability or lack thereof as to the petitioners alleged due process claims. “[T]o succeed on a claim of procedural due process deprivation, that is, a lack of notice and opportunity to be heard — a plaintiff must establish that state action deprived him of a protected property interest.” (Sanitation & Recycling Indus., Inc. v City of New York, 107 F3d 985, 995 [2d Cir 1997]; see also Mathews v Eldridge, 424 US 319, 332 [1976]). More specifically, a plaintiff or petitioner must “first identify a property right, second show that the state has deprived him [or her] of that right, and third, show that the deprivation was effected without due process” (Local 342, Long Is. Pub. Serv. Empls., UMD, ILA, AFL-CIO v Town Bd. of Town of Huntington, 31 F3d 1191, 1194 [2d Cir 1994], quoting Mehta v Surles, 905 F2d 595, 598 [2d Cir 1990] [per curiam]).
*826 Here, the property right of which Mr. Malley is alleged to have been deprived without due process is the subject home improvement license. It has been held that while an individual has no “property right in a possible future license” (Sanitation & Recycling Indus., Inc. v City of New York, 107 F3d 985, 995 [1997], supra), “once the government has granted a business license to an individual, the government cannot £depriv[e] [the individual of] such an interest . . . without appropriate procedural safeguards’ ” (Spinelli v City of New York, 579 F3d 160, 169 [2d Cir 2009], quoting Arnett v Kennedy, 416 US 134, 167 [1974, Powell, J., concurring op]). Thus, the petitioners’ home improvement license is a form of property sufficient to allege a claim predicated upon deprivation of due process (id.; Local 342, Long Is. Pub. Serv. Empls., UMD, ILA, AFL-CIO v Town Bd. of Town of Huntington, 31 F3d 1191 [1994], supra). Further, as the respondents unquestionably suspended the subject license, the petitioners clearly suffered a deprivation thereof (id.).
However, as to whether said deprivation was effected without due process, the court must inquire as to what process is due. Generally, “[d]ue process is flexible and calls for such procedural protections as the particular situation demands” (Mathews v Eldridge, 424 US 319, 334 [1976]), and under many circumstances “something less than a full evidentiary hearing is sufficient prior to adverse administrative action” (Rothenberg v Daus, 2010 WL 3860425, *4, 2010 US Dist LEXIS 105128, *11 [SD NY 2010], citing Bell v Burson, 402 US 535 [1971]). However, “[t]he hearing required by the Due Process Clause must be ‘meaningful’ ” (Bell v Burson, 402 US 535, 541 [1971], supra, quoting Armstrong v Manzo, 380 US 545, 552 [1965]), as well as “ ‘appropriate to the nature of the case’ ” (id., quoting Mullane v Central Hanover Bank & Trust Co., 339 US 306, 313 [1950]).
Of direct relevance to the due process inquiry are the particular actions undertaken by the respondents vis-a-vis the suspension of the petitioners’ license. Here, the Commissioner has asserted that based upon NCAC § 21-11.8 (4) and (9), her decision to suspend the petitioners’ license was factually justified and legally correct. NCAC § 21-11.8 (4) and (9), provide the following:
“[a] license to conduct, operate, engage in and transact a home improvement business as a home improvement contractor may be refused, suspended *827 or revoked by the Commissioner, . . . for any one or more of the following causes: . . .
“4. [t]he person or the management personnel of the contractor are untrustworthy or not of good character . . .
“9. [violation of any provision of this title, or of any rule or regulation adopted hereunder.”
Having carefully reviewed the relevant provisions of the NCAC, this court agrees that section 21-11.8 sets forth the substantive bases upon which a license may be suspended. However, what this section does not address are the procedural mechanisms attendant to such suspensions as are elsewhere expressed in the NCAC. Specifically, NCAC § 21-11.13 (b), provides the following, in pertinent part:
“[a] license may be suspended or fine imposed after a hearing had before an officer or employee of the Commissioner . . . upon notice to the licensee of at least ten (10) days except as otherwise provided in this section. The notice shall . . . set forth the ground or grounds constituting the charges against the licensee, and if the licensee fails to attend such hearing, the Commissioners shall revoke the license of said licensee. The licensee shall be heard in his defense either in person or by counsel and may offer evidence on his behalf.”
Thus, while a full evidentiary hearing need not have been afforded to the petitioners to satisfy the demands of due process, in the matter sub judice it is undisputed that the petitioners were not afforded with any presuspension hearing, as is plainly required by the NCAC (Bell v Burson, 402 US 535 [1971], supra).
Finally, and with respect to that which constitutes adequate notice, while “ £[t]he particularity with which alleged misconduct must be described varies with the facts and circumstances of the individual case . . . due process notice contemplates specification of facts or patterns of conduct, not general, conclusory charges unsupported by specific factual allegations’ ” (Rothenberg v Daus, 2010 WL 3860425, *8, 2010 US Dist LEXIS 105128, *25 [2010], quoting Spinelli v City of New York, 579 F3d 160, 172 [2d Cir 2009]). Here, the respondents sent two letters to Mr. Malley informing him of the suspension. However, nowhere therein do said letters set forth the allegations specifically outlined by the Commissioner and which admittedly formed the basis of her decision to effect the suspension {id.).
*828 Therefore, in accordance with the foregoing, this court finds that the respondents have violated the petitioners’ rights to procedural due process as are guaranteed under the United States Constitution (Sanitation & Recycling Indus., Inc. v City of New York, 107 F3d 985 [1997]; Bell v Burson, 402 US 535 [1971], supra). Moreover, notwithstanding the procedural protections clearly articulated in NCAC § 21-11.13 (b), the respondents herein have inexplicably acted in direct contravention thereof and as such the court additionally finds that the actions of the respondents were arbitrary and capricious (Matter of Cohen v State of New York, 2 AD3d 522 [2003], supra).
Accordingly, the decision of the respondents to suspend the petitioners’ home improvement license is hereby annulled and that branch of the within petition denominated (a), which seeks an order and judgment directing the Commissioner of the Nassau County Office of Consumer Affairs and the Office of Consumer Affairs, to forthwith lift the suspension of the petitioners’ home improvement license is granted. In accordance therewith, that branch of the within petition, denominated (d), and which seeks an order and judgment directing the Commissioner and Consumer Affairs to write a letter to petitioners if the license is suspended, setting forth the reasons therefor and setting a hearing date, with at least 10 days’ notice prior thereto, is dismissed as moot (CPLR 7806).
The court now addresses those branches of the within petition denominated (b), (c) and (e), which seek an order and judgment directing the Commissioner and Consumer Affairs to “adopt rules and regulations for the issuance of home improvement licenses,” directing the Commissioner and Consumer Affairs “to make Petitioners’ home improvement license a full license” and directing the Commissioner and Consumer Affairs “to appoint members to constitute the Home Improvement Industry Board and receive its recommendations.”*
A CPLR article 78 proceeding which seeks a judgment compelling a government official to engage in a particular act is in the nature of mandamus (Klostermann v Cuomo, 61 NY2d 525 [1984]). “Traditionally, £[m]andamus lies to compel the performance of a purely ministerial act where there is a clear legal right to the relief sought’ ” (id. at 539, quoting Matter of Legal Aid Society of Sullivan County v Scheinman, 53 NY2d 12, 16 [1981]). “The long established law is that £[w]hile a mandamus *829 is an appropriate remedy to enforce the performance of a ministerial duty, it is well settled that it will not be awarded to compel an act in respect to which the officer may exercise judgment or discretion’ ” (id., quoting Matter of Gimprich v Board of Educ. of City of N.Y., 306 NY 401, 406 [1954]). Here, the Court finds that those branches of the petition denominated (b), (c) and (e), involve something more than the mere execution of a ministerial act and rather encompass decisions, which must be made by the Commissioner, but only after a process which is both considered and deliberate (id.).
Accordingly, those branches of the within petition denominated (b), (c) and (e) are hereby dismissed (CPLR 7806).
Addressing finally the matter of counsel fees, the petitioners assert that given the due process violations committed by the respondents fall with the ambit of 42 USC § 1983, an award of counsel fees is appropriate. “In any action or proceeding to enforce a provision of [section] . . . 1983 ... of this title, the court, in its discretion, may allow the prevailing party . . . reasonable attorney’s fees as part of the costs” (42 USC § 1988 [b]). The Court of Appeals has held that “[a] wide variety of Federal rights are encompassed by section 1983 and can, therefore, qualify for a discretionary fee award under section 1988” including those “rights secured by the Due Process Clause of the Fifth and Fourteenth Amendments” (Matter of Thomasel v Perales, 78 NY2d 561, 567 [1991]).
In the instant proceeding, as the petitioners have sued the Commissioner in her official capacity, the provisions embodied in the Eleventh Amendment will necessarily bear on whether or not counsel fees can be awarded herein (Giaquinto v Commissioner of N.Y. State Dept. of Health, 11 NY3d 179 [2008]). “It is well settled that the Eleventh Amendment bars a ‘suit by private parties seeking to impose a liability which must be paid from public funds’ ” (id. at 187, quoting Edelman v Jordan, 415 US 651, 663 [1974]). Moreover, “under Eleventh Amendment sovereign immunity, ‘neither a State nor its officials acting in their official capacities’ ” are considered persons within the purview of 42 USC § 1983 (id. at 187, quoting Will v Michigan Dept. of State Police, 491 US 58, 71 [1989]).
The United States Supreme Court has set forth a narrow exception to this shield of immunity usually afforded to individuals acting in their official capacities (id.). This exception states that
*830 “[i]f the act which the state [officer] seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States” (id. at 187, quoting Ex parte Young, 209 US 123, 159-160 [1908]).
However, notwithstanding this exception that public officials can, under circumstances be susceptible to legal action, the scope of relief for which they can be sued remains carefully circumscribed (Giaquinto v Commissioner of N.Y. State Dept. of Health, 11 NY3d at 188). Specifically, “[s]tate officials acting in their official capacities may only be sued for injunctive or prospective relief’ where the nature thereof “seeks to end an ongoing or future violation of the law” (id.). Thus, while relief which functions directly “to bring an end to a present violation of federal law is not barred by the Eleventh Amendment,” relief which serves “compensatory or deterrence interests [is] insufficient to overcome the dictates of the Eleventh Amendment” (Papasan v Allain, 478 US 265, 278 [1986]). Here, the Commissioner, in suspending the subject home improvement license in the absence of a meaningful presuspension hearing and adequate notice thereof, has both caused and perpetuated a continuing deprivation of the petitioners’ due process rights as are guaranteed by the 14th Amendment to the United States Constitution (id.; Matter of Thomasel v Perales, 78 NY2d 561 [1991], supra; Giaquinto v Commissioner of N.Y. State Dept. of Health, supra; 42 USC § 1988 [b]).
Accordingly, based upon the foregoing, the branch of the within petition, which seeks a judgment for counsel fees, is hereby granted. Counsel for the petitioners are hereby directed to submit a judgment on notice, together with the requisite documentation itemizing the actual work undertaken, the time expended thereon, and the amounts charged in relation thereto.

See petition at 8, 9.